# Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

JEFFERIES LLC,

                                    Plaintiff,          Index No:

                  - against -

BANRO CORP.,                                            **COMPLAINT**

                                    Defendant.


Plaintiff Jefferies LLC ("Jefferies") hereby alleges, upon knowledge as to Jefferies and upon information and belief as to all other allegations, its Complaint against Defendant Banro Corporation ("Banro" or the "Company"):

## NATURE OF THE ACTION

1.      This action arises from Banro's breach of its contractual obligations to Jefferies pursuant to an October 12, 2016 engagement letter executed between the parties (the "Agreement"), a copy of which is attached hereto as Exhibit A.  Under the Agreement, Banro retained Jefferies to act on its behalf in connection with one or more possible Transactions defined to include a broad range of Debt Securities Transactions and/or Tender Consent Transactions defined therein.[1]

2.      In return for Jefferies' agreement to act on Banro's behalf, Banro agreed to pay Jefferies a fee upon the consummation of a qualifying Transaction under the Agreement (the "Transaction Fee"). Ex. A., ¶¶ 4, 7.

3.      Banro also agreed to reimburse Jefferies for all out-of-pocket expenses incurred by Jefferies in connection with the engagement contemplated under the Agreement. Ex. A, ¶ 5.

4.      Banro also agreed that, in the event of a termination of the Agreement, Jefferies would nevertheless be entitled to a Transaction Fee if Banro consummated or entered into an agreement that resulted in a Transaction within six (6) months of the effective date of termination of the Agreement (the "Tail Provision").  Ex. A, ¶ 7.

---

[1]      All capitalized terms used in this Complaint have the definitions provided in the Agreement unless otherwise defined herein.

1

5.     Jefferies fully performed its obligations under the Agreement, including performing extensive work for Banro.

6.     In contravention of multiple provisions of the Agreement, without any prior notice to Jefferies, Banro announced that it has entered into a qualifying Transaction, but has refused to pay either the Transaction Fee, or the out-of-pocket expenses incurred by Jefferies.

7.     Jefferies brings this action to recover any and all Transaction Fees, and out-of-pocket expenses due and owing under the Agreement, in an amount not less than USD $3,702,369.73, plus interest, and all contractually mandated attorneys' fees incurred by Jefferies in bringing this action.

## PARTIES, JURISDICTION, AND VENUE

8.     Plaintiff Jefferies is a limited liability company organized under the laws of the state of Delaware with its principal place of business at 520 Madison Avenue, New York, New York 10022.

9.     Upon information and belief, Defendant Banro is a corporation organized under the laws of the Canadian province of Ontario with its headquarters at 1 First Canadian Place Suite 7070, 100 King Street West, Toronto, Ontario MX5 1E3, Canada.

10.     Section 11 of the Agreement explicitly provides that this Court has exclusive jurisdiction.  Therefore, this Court has personal and subject matter jurisdiction over Banro as Banro contractually agreed and consented to both personal and subject matter jurisdiction in this Court pursuant to Section 11 of the Agreement.  In addition, as alleged below, this lawsuit arises out of actions taken and business transacted within the State of New York, and this Court has jurisdiction on that basis under CPLR § 302.

11.     Venue is proper in this Court under CPLR §§ 501 and 503 as Banro consented and agreed to venue in this Court in Section 11 of the  Agreement and Plaintiff Jefferies resides in New York County.

## FACTS

### A. Banro Retained Jefferies To Act on Its Behalf in Connection with One or More Possible Transactions

12.     Jefferies is a global securities and investment group, which provides investment banking, sales and trading, and research and asset management services to its clients.

13.     Banro is a Canadian gold mining company focused on production from the Twangiza and Namoya mines in the Democratic Republic of the Congo.

14.     On or about October 12, 2016, Banro and Jefferies entered into the Agreement.

15.     Banro retained Jefferies to act on Banro's behalf in connection with one or more possible Transactions, including a Debt Securities Transaction and/or a Tender/Consent Transaction. Ex. A, ¶ 1.

16.     The Agreement defines a Debt Securities Transaction to include, "the sale and/or placement, whether in one or more public or private transactions, of notes, bonds, debentures, and/or other debt securities or term loan or similar instruments of [Banro] (including, without limitation, mezzanine instruments) other than pursuant to the ordinary course equipment financing and Congolese bank debt . . . . " Ex. A, ¶ 1.

17.     The Agreement defines a Tender/Consent Transaction to include, "a tender offer and/or exchange offer for, and solicitation of consents for the extension of the final maturity of, [Banro's] 10.00% Senior Notes due 2017 . . . ." Ex. A, ¶ 1.

18.     In return for Jefferies' services, Banro agreed to compensate Jefferies by paying a Transaction Fee "[p]romptly upon the closing of each . . . Transaction." Ex. A, ¶ 4.

19.     The Agreement also provides that "[i]n addition to any fees that may be paid to Jefferies . . . the Company will reimburse Jefferies . . . for all expenses . . . reasonably incurred by Jefferies." Ex. A, ¶ 5.

20.     Banro's obligations to pay Jefferies a Transaction Fee and to reimburse Jefferies for its expenses survive the Agreement's termination.

21.     Specifically, the Tail Provision in the Agreement provides that "[i]n the event of any termination of this Agreement by the Company, Jefferies shall be entitled to the applicable fee or fees . . . if, on or prior to 6 months from the effective date of termination of

3

this Agreement, the Company consummates, or enters into an agreement which subsequently results in a Transaction . . ."). Ex. A, ¶ 7.

22.    In addition to Banro's payment obligations under the Agreement, Banro is also obligated to cooperate with Jefferies.

23.    Specifically, the Agreement provides that Banro will, among other things, promptly advise Jefferies of any proposed Transaction and of any material initiatives relating to a proposed Transaction. Ex. A, ¶ 2(a).

24.    The Agreement also provides that Banro shall pay all of Jefferies' costs and expenses, including attorneys' fees, in an enforcement proceeding if the court determines that Jefferies is entitled to recover amounts due under the Agreement. Ex. A, ¶ 5.

### B. Jefferies Fully Performed Its Obligations Under the Agreement, Including Performing Extensive Work on Banro's Behalf

25.    Jefferies fully performed its obligations under the Agreement.

26.    Jefferies performed extensive work for Banro, which included making multiple substantive presentations to Banro at its offices in Toronto, Canada, drafting offering memoranda and preparing other marketing materials, conducting complex due diligence, preparing materials for the ratings agencies, identifying investors, organizing investor meetings, and collecting investor feedback.

27.    This work was performed by a very senior team of Jefferies bankers.

### C. Banro Terminated the Agreement and Six Days Later Announced Its Plan to Enter into a Transaction, Unbeknownst to Jefferies

28.    On January 25, 2017, Banro sent Jefferies a Notice of Termination of the Agreement.

29.    On January 27, 2017, Jefferies sent Banro a letter in response to Banro's Notice of Termination in which Jefferies expressly reminded Banro of certain obligations under the Agreement including Banro's payment obligations under the Tail Provision.

30.    On January 31, 2017, six days after Banro terminated the Agreement, Banro issued a press release announcing that it planned, inter alia, to enter into an agreement with shareholders in connection with an exchange of USD $175.00 million of senior secured notes (the "Senior Notes Transaction"), which is a Transaction explicitly covered by the Agreement.

4

31.     Despite its clear obligation to do so under the Agreement, Banro did not advise Jefferies about any Transaction, including the Senior Notes Transaction.

32.     Instead, Jefferies learned about the Senior Notes Transaction from publicly available information.

**D.  The Senior Notes Transaction Is Explicitly Covered By The Agreement and Banro Has Breached Its Contractual Obligations Under The Agreement By Refusing to Pay Jefferies the Transaction Fee or Expense Reimbursement**

33.     After learning about the Senior Notes Transaction, on or about February 6, 2017, Jefferies made a demand for its contractually owed Transaction Fee, in the amount of USD $3,062,500.00, which represents 1.75% of the USD $175.00 million Senior Notes Transaction.

34.     Jefferies calculated the Transaction Fee based on Section 4 of the Agreement, which states that Jefferies is entitled to 1.75% of the USD $175.00 million Senior Notes Transaction.

35.     At the same time, Jefferies invoiced Banro for USD $588,021.66, representing certain out-of-pocket expenses, including legal fees from its United States counsel, which Jefferies had incurred in connection with the Agreement (the "Expense Invoice").

36.     On or about March 7, 2017, Banro responded in writing and refused to pay either the Transaction Fee or the Expense Invoice.

37.     Jefferies also incurred out-of-pocket expenses in the amount of USD $51,848.07 for legal fees from its Canadian counsel, McCarthy Tetrault, in connection with the Agreement (the "McCarthy Fees").

38.     McCarthy invoiced Banro directly for those fees.

39.     On or about March 20, 2017, Jefferies made a second demand to Banro for payment of the Transaction Fee and Expense Invoice.

40.     Banro has not responded to the March 20, 2017 demand.

41.     Upon information and belief, on or about March 31, 2017, Banro convened a Special Meeting of Common Shareholders, during which Banro shareholders ratified the Senior Notes Transaction.

42.     On March 31, 2017, Banro announced via press release that it had obtained shareholder approval of the Senior Notes Transaction.

5

43. The Senior Notes Transaction is a Transaction that is explicitly covered by the Agreement.

44. In fact, at no point in time during the correspondence between the parties prior to the initiation of this lawsuit did Banro dispute that the Senior Notes Transaction is a Transaction covered by the Agreement.

45. Yet, to date, Banro has refused to pay either the Transaction Fee or the Expense Invoice. Therefore, Banro continues to owe Jefferies a total of USD $3,062,500.00 for the Transaction Fee and USD $588,021.66 for the Expense Invoice.

46. Banro also has not paid the McCarthy Fees in the amount of USD $51,848.07.

47. The Expense Invoice has been due and owing for more than 30 days. Pursuant to Section 5 of the Agreement, Jefferies has the contractual right to charge interest on that outstanding amount.

48. Specifically, the Agreement provides that if interest is "unpaid after 30 days from the date of the invoice, [it] shall thereafter carry interest from such a date, both before and after any judgment, at a rate equivalent to LIBOR plus 1% compounded quarterly until payment." Ex. A, ¶ 5.

49. Jefferies brings this action to recover no less than USD $3,702.369.73 that Banro contractually owes to it, plus interest, and all contractually mandated attorneys' fees incurred by Jefferies in bringing this action.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

50. Jefferies repeats and realleges each and every allegation contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

51. Jefferies and Banro are parties to the Agreement and executed the Agreement on or about October 12, 2016.

52. Banro contractually agreed to pay Jefferies a Transaction Fee for any Transaction covered by the Agreement, and to reimburse Jefferies for the out-of-pocket expenses incurred by Jefferies on its behalf.

53. Jefferies fully performed all of the services it was required to perform under the Agreement.

6

54.     Banro has consummated a Transaction that is explicitly covered by the Agreement.

55.     Banro breached the Agreement by failing and refusing to pay Jefferies the amounts it is contractually owed under the Agreement, including the Transaction Fee and the Expense Invoice.

56.     As a result of this breach of the Agreement, Jefferies has been damaged in an amount to be determined at trial, but not less than USD $3,702,369.73, plus interest.

57.     Pursuant the Agreement, any judgment that is entered against Banro shall include Jefferies' costs and expenses, including attorneys' fees in bringing this action.  Ex. A, ¶ 12.

7

## REQUESTS FOR RELIEF

WHEREFORE, Jefferies respectfully requests judgment in its favor as follows:

(a)    awarding Jefferies a monetary judgment against Banro in an amount to be determined at trial, but not less than USD 3,702,369.73,, plus pre-judgment interest at 9% per annum, as provided for in CPLR § 5004, in connection with Banro's breach of its contractual obligation under the Agreement with Jefferies;

(b)    awarding Jefferies its costs and expenses in bringing this action, including the fees and expenses of its attorneys; and

(c)    any such other and further relief as the Court may deem just and proper.


Dated: June 23, 2017
New York, New York


                                        HERBERT SMITH FREEHILLS
                                        NEW YORK LLP

                                        By    */s/ Scott S. Balber*    _____

                                        Scott S. Balber
                                        Attorneys for Plaintiff
                                        450 Lexington Avenue
                                        14th Floor
                                        New York, NY 10017
                                        (917) 542-7600
                                        scott.balber@hsf.com

8

Exhibit A

Strictly Confidential

**Engagement Letter**

October 12, 2016

**Banro Corporation**
1 First Canadian Place
Suite 7070
100 King Street West
Toronto, ON
M5X 1E3
Canada

Attention:     John A. Clarke
               Chief Executive Officer

Re: Financing Transaction

          This agreement (this "Agreement") will confirm the arrangements under which Jefferies LLC ("Jefferies") has been engaged by Banro Corporation, a Canada corporation, and its present and future affiliates and subsidiaries and any entity used thereby to facilitate the transactions contemplated hereby (collectively, the "Company"), to act as set forth below in connection with one or more possible Transactions (as defined below).

1.        Retention. The Company hereby retains and authorizes Jefferies, during the term of this Agreement, to act as (i) sole global coordinator, sole manager, sole bookrunner, sole placement agent, sole arranger, sole underwriter and/or initial purchaser, as the case may be, in connection with any of the following (each, a "Debt Securities Transaction"): the sale and/or placement, whether in one or more public or private transactions, of notes, bonds, debentures and/or other debt securities or term loan or similar instruments of the Company (including, without limitation, mezzanine instruments) other than pursuant to ordinary course equipment financing and Congolese bank debt (individually and collectively, "Debt Securities"), and (ii) as exclusive dealer-manager and/or consent solicitation agent in connection with a tender offer and/or exchange offer for, and solicitation of consents for the extension of the final maturity of, the Company's 10.00% Senior Notes due 2017 (the "Senior Notes") (the "Tender/Consent Transaction" and each Debt Securities Transaction and Tender/Consent Transaction, a "Transaction") . For the avoidance of doubt, if a Transaction is executed in more than one issuance or tranche, each shall be deemed to be a Transaction for the purposes of this Agreement.

          (a)      In connection with a Transaction, the Company shall enter into such underwriting agreement, placement agency agreement, credit agreement, purchase agreement, dealer manager agreement, and/or solicitation agency agreement with Jefferies as Jefferies deems necessary, which agreement(s) will be based on Jefferies' customary form for the applicable Transaction and will be on terms consistent with this Agreement and otherwise on terms mutually acceptable to Jefferies and the Company, acting reasonably (a "Definitive Agreement"). As requested by the Company and

**Banro Corporation**
October 12, 2016
Page 2

customary and appropriate for the Transaction, Jefferies will also assist, alongside appropriate counsel, with the preparation of other marketing materials for the Transaction, and a roadshow to potential investors; and performing any such acts the Company and Jefferies may determine as reasonable and necessary to negotiate and market the Transaction. The Company acknowledges that Jefferies will not be providing any legal, tax or accounting advice.

(b)     It is understood and agreed that the Company's engagement of Jefferies pursuant to this Agreement is not an express or implied commitment by, nor shall this Agreement otherwise create any obligation on, Jefferies to underwrite, place or purchase any Debt Securities or otherwise provide or arrange any financing, and that any such obligation shall only exist as set forth in, and subject to the provisions of, such Definitive Agreement.

2.     Cooperation.

(a)     The Company shall furnish Jefferies with all current and historical materials and information regarding the business and financial condition of the Company relevant to the Transaction, and all other information and data, and access to the Company's officers, directors, employees and professional advisors, which Jefferies may reasonably request in connection with Jefferies' activities hereunder, as further detailed in Section 2(f) (Conditions precedent) below. All such materials, information and data shall be complete and accurate in all material respects and not materially misleading. The Company agrees to promptly advise Jefferies of all developments materially affecting the Company, any proposed Transaction or the completeness or accuracy of the information previously furnished to Jefferies, and agrees that no material initiatives relating to the proposed Transaction will be taken without Jefferies having been consulted in advance thereof.

(b)     The Company further acknowledges that, except to the extent Jefferies, in its sole discretion, deems necessary to establish applicable "due diligence" defenses, Jefferies (i) will be relying on information and data provided to Jefferies (including, without limitation, information provided by or on behalf of the Company) and available from generally recognized public sources, without having independently verified the accuracy or completeness thereof, (ii) does not assume responsibility for the accuracy or completeness of any such information and data, (iii) has  not made, and will not make, any physical inspection or appraisal of the properties, assets or liabilities (contingent or otherwise) of the Company and (iv) in relying on any financial forecasts that may be furnished to or discussed with Jefferies, will assume that such forecasts have been reasonably prepared on a basis reflecting the best currently available estimates and good faith judgments of management as to the future financial performance of the Company (and if such forecasts no longer reflect such estimates and judgments, then the Company will promptly inform, and provide updated forecasts to, Jefferies).

(c)     The Company authorizes Jefferies to distribute to prospective investors or participants in a Transaction a registration statement and prospectus or confidential

**Banro Corporation**
October 12, 2016
Page 3

offering, placement or information memorandum and other disclosure and/or solicitation materials prepared or reviewed and approved by the Company for use in connection with a Transaction (for purposes of the immediately following sentence and the indemnification provisions in Schedule A, together with any reports, statements and other documents publicly filed by the Company with the Securities and Exchange Commission pursuant to Sections 13(a), 13(c), 14 and 15(d) of the U.S. Securities Exchange Act of 1934, as amended, and any Rating Agency Presentation (as defined below), in each case, if applicable, the "Materials"), which Materials shall be subject to Jefferies' review and approval prior to distribution. The Company acknowledges that the Company shall be solely responsible for the accuracy and completeness of the Materials distributed in connection with a Transaction (except as may be subsequently agreed in a definitive purchase agreement for a Transaction executed by both parties hereto and solely to the extent expressly provided therein (for example, with respect to certain identified "blood letter" information concerning Jefferies)), and agrees that such Materials shall not contain any untrue statement of material fact, or omit to state a material fact necessary to make the statements contained therein, in light of the circumstances in which they were made, not misleading. The Company further agrees that it will (i) provide Jefferies as soon as practicable but in any event no later than is reasonable and customary for the applicable Transaction, with a complete initial draft of the Materials, which contains all financial statements and other data to be included therein (including all audited financial statements, all unaudited financial statements (which shall have been reviewed by the independent accountants for the Company) and any appropriate pro forma financial statements prepared in accordance with International Financial Reporting Standards, as issued by the International Accounting Standards Board, that the Ontario securities legislation would require in a prospectus offering of any securities in the Transaction or that would be necessary for Jefferies to receive customary "comfort" (including "negative assurance" comfort) from independent accountants in connection with the Transaction) (collectively, the "Required Financial Information"), and (ii) provide Jefferies, if applicable, as soon as practicable but in any event no later than is reasonable and customary for financings of such type, with complete printed preliminary Materials suitable for use in a customary "roadshow" relating to the Transaction (including the Required Financial Information) in such number of copies as Jefferies (and, if any, the other underwriters for the Transaction) reasonably request. The Company also agrees that, if applicable, it will promptly commence the preparation of a presentation to Standard & Poor's Rating Group and Moody's Investors Service, Inc. for a rating on any applicable Debt Securities (a "Rating Agency Presentation").

(d)    Prior to amending or supplementing the Materials, the Company shall furnish to Jefferies for review a copy of each such proposed amendment or supplement. If, prior to the pricing of a Transaction, any event shall occur or condition shall exist as a result of which it is necessary to amend or supplement the Materials in order to make the statements therein, in the light of the circumstances in which they are made, not materially misleading, the Company shall promptly prepare and furnish to Jefferies such amendments or supplements. The Company shall comply, and shall assist Jefferies in

**Banro Corporation**
October 12, 2016
Page 4

complying, with all applicable securities laws and regulations in connection with this Agreement.

(e)      The Company agrees that, with respect to a Transaction in the form of a direct private placement of Debt Securities (i) at closing of the Transaction, it shall cause its outside counsel to issue to Jefferies an opinion covering matters customary for transactions of a similar nature, in form and substance acceptable to Jefferies, acting reasonably, and (ii) Jefferies will be entitled to rely, as an express third-party beneficiary, on the representations, warranties and covenants of the Company and the investors in such Transaction that are set forth in the definitive agreement between the Company and the investors in such Transaction (such agreement or agreements, collectively, the "Purchase Agreement"). The Purchase Agreement and other documentation related to the Transaction shall be in form and substance reasonably satisfactory to Jefferies.

(f)      It is understood that the obligations of Jefferies to arrange the Transaction is subject to all of the following conditions precedent:

1.      the Company's compliance with Section 2 (Cooperation) of this Agreement;

2.      due diligence, customary for securities offerings of the type contemplated herein, satisfactorily completed by Jefferies, and nothing having come to Jefferies' or its financial or legal advisors' attention which, in its opinion, would prejudice the success of the Transaction;

3.      receipt of all necessary approvals and consents (both internal and external, including, if applicable, governmental) of the Company;

4.      no event of default and/or potential event of default having occurred under any existing obligations of the Company;

5.      the absence of any material adverse change in the Company's financial condition, business, results, operations or prospects;

6.      there being in Jefferies' view no change in national or international financial, political or economic conditions or currency exchange rates or exchange controls or investor demand or the bond markets generally or any other conditions or markets as would in Jefferies' view be likely to prejudice the success of the Transaction; and

7.      receipt of all necessary internal and external approvals by Jefferies (including relevant internal committee approvals and the completion of know-your-customer procedures) and satisfactory completion of all applicable regulatory requirements.

**Banro Corporation**
October 12, 2016
Page 5

3.     Use of Name, Agreement.  The Company agrees that any reference to Jefferies in any release, communication or other material is subject to Jefferies' prior written approval, which may be given or withheld in its reasonable discretion, for each such reference.  The Company agrees not to disclose this Agreement, the contents hereof or the activities of Jefferies pursuant hereto to any third party (other than on a confidential non-reliance basis to the Company's lawyers and auditors who have a need to know in connection with the Transaction) without the prior approval of Jefferies, which shall not be unreasonably withheld.

4.     Compensation.  The Company agrees to compensate Jefferies as follows:

           (i)     Promptly upon closing of each Debt Securities Transaction, a fee (the "Debt Securities Fee") equal to 3.75% (the "Applicable Percentage") of either (i) the aggregate principal amount of such Debt Securities if the Debt Securities are issued below par; or (ii) the gross proceeds from the Transaction if the Debt Securities are issued at or above par; provided, however, that the Applicable Percentage shall be reduced to 1.75% on the principal amount or gross proceeds (as applicable) exclusively received from Gramercy Funds Management LLC (including any of its Affiliates and any investment funds managed by Gramercy Funds Management LLC) ("Gramercy") and Baiyin International Investment Ltd (including any of its Affiliates) ("Baiyin") (the "Discount"); and that the Discount shall only apply to the first US$150.0 million received from Gramercy and Baiyin unless, at the written request of Jefferies, additional funds are required from either Gramercy and/or Baiyin above US$150.0 million in order to satisfy otherwise insufficient demand and successfully complete the Transaction, in which case the Discount shall apply to such additional required funds. For purposes of this section 4(i), the term "Affiliates" shall mean any entity controlling, controlled by, or under common control with the specified entity. For the avoidance of doubt, in connection with any exchange of Senior Notes by Gramercy and Baiyin for Debt Securities, the 1.75% fee payable to Jefferies for such exchange shall be payable pursuant to either this Section 4(i) or Section 4(ii) below but not pursuant to both Section 4(i) and Section 4(ii), and such fee shall be counted towards the U.S.$5.3 million figure referred to in Section 7.

           (ii)     Promptly upon the tender or consent date in respect of a Tender/Consent Transaction, a fee of 1.75% of the aggregate principal amount of the Senior Notes which are the subject of such Tender/Consent Transaction.

5.     Expenses.  In addition to any fees that may be paid to Jefferies hereunder, whether or not any Transaction occurs, the Company will reimburse Jefferies, promptly upon receipt of an invoice therefor (and if unpaid after 30 days from the date of the invoice, shall thereafter carry interest from such date, both before and after any judgment, at a rate equivalent to LIBOR plus 1% compounded quarterly until payment), for all expenses (including but not limited to fees and expenses of legal counsels, the costs of any roadshows or investor presentations, fees and expenses of any other independent experts retained by Jefferies if such retention is approved (not to be unreasonably withheld) by the Company, and any additional travel and other out-of-pocket expenses not specified above) reasonably incurred by Jefferies and its designated affiliates in connection with

**Banro Corporation**
October 12, 2016
Page 6

the engagement contemplated hereunder including applicable VAT or similar taxes, provided, however, that the amount of such fees and expenses for which Jefferies shall seek reimbursement from the Company under this Section 5 (other than fees and expenses of Jefferies' counsel which shall be reimbursed in full) shall not exceed US$100,000 in the aggregate without the approval of the Company (such approval not to be unreasonably withheld). All payments under this Agreement shall be made free and clear of any set-off, withholding, deduction, claim or taxes applicable to the Company. For the avoidance of doubt, the Company shall be responsible for its own legal fees and expenses. In addition, upon the written (which may be email) request of the Company (no more often than every two weeks), Jefferies will request its Transaction counsel to provide estimates of the expenses incurred by such counsel to date (for the avoidance of doubt, the foregoing shall not apply to Schedule A).

6.    Indemnification, etc.    As further consideration under this Agreement, the Company shall indemnify and hold harmless the Indemnified Persons (as defined in Schedule A) in accordance with Schedule A. The terms and provisions of Schedule A are incorporated by reference herein, constitute a part hereof and shall survive any termination or expiration of this Agreement. Neither Jefferies nor any of the Indemnified Persons shall be responsible or have any liability for any indirect, special or consequential damages arising out of or in connection with this Agreement or the transactions contemplated hereby, even if advised of the possibility thereof. In the event the parties enter into a Definitive Agreement for a Transaction that takes the form of a Rule 144A notes offering, the indemnification terms in such Definitive Agreement shall supersede the terms of Schedule A in respect of such Transaction.

7.    Termination. This Agreement may be terminated (a) by Jefferies at any time with or without any cause on five days' written notice to the Company, (b) by the Company at any time after December 31, 2016, with or without any cause on five days' written notice to Jefferies, if a Definitive Agreement has not been entered into by December 31, 2016, and (c) upon written notice by the Company or Jefferies after closing of a Transaction. Upon any termination of this Agreement, the Company shall promptly pay Jefferies any accrued but unpaid fees hereunder, and shall reimburse Jefferies for any unreimbursed expenses that are reimbursable hereunder. In the event of any termination of this Agreement by the Company, Jefferies shall be entitled to the applicable fee or fees set forth in Section 4 if, on or prior to 6 months from the effective date of termination of this Agreement, the Company consummates, or enters into an agreement which subsequently results in, a Transaction ("Tail Provision"), provided, however, that no such fee or fees shall be payable (i) with respect to any preferred (or preference) shares exercisable for common shares of Banro Corporation, or (ii) with respect to a financing for which the proceeds are solely used to finance any hydroelectric power project (i.e., but only to the extent that such financing is not part of a larger Transaction); provided further, than if one or more Debt Securities Transactions are consummated with Jefferies receiving aggregate fees of no less than U.S.$5.3 million, the Tail Provision shall not apply in respect of other Transactions. Any such fee or fees shall be payable upon the closing of any such Transaction. Upon any termination of this Agreement, the rights and

**Banro Corporation**
October 12, 2016
Page 7

obligations of the parties hereunder shall terminate, except for the obligations set forth in Sections 3-7, 9-16, and Schedule A, which shall survive such termination.

8.  Exclusivity.

During the term of this Agreement, the Company agrees that it will not, directly or indirectly, offer to sell or borrow any Debt Securities or access the international capital markets with respect to Debt Securities, as applicable, solicit an offer to purchase or lend any Debt Securities or access the international capital markets with respect to Debt Securities, or otherwise contact any other party in connection with the structuring, issuance, sale, arrangement, placement, lending or purchase of Debt Securities or access to the international capital markets with respect to Debt Securities, other than through Jefferies. In addition, and without limiting the foregoing, during the term of this Agreement, the Company will not engage any other party to perform any services or act in any capacity for which Jefferies has been engaged pursuant to this Agreement with respect to any potential Transaction without the prior written approval of Jefferies.

9.  Other Transactions; Disclaimer.

(a)    The Company agrees that Jefferies shall have the right to pitch to provide Hedging Facilities (as defined hereafter) in connection to the Transaction. "Hedging Facilities" mean any cross currency swap or other swap, cap or other instrument in connection with the Transaction, and Jefferies' agreement to provide any Hedging Facilities is subject to internal approvals and documentation satisfactory to Jefferies.

(b)    If, at any time following completion of the Transaction and while any amount of the Debt Securities issued pursuant to such Transaction remains outstanding, the Company decides to reopen such Debt Securities by way of a "tap", "tack on" or similar transaction (the "Re-opening"), Jefferies shall have the exclusive right, but not the obligation, to act as a sole global coordinator and sole bookrunning manager in connection with the Re-opening, and to receive all of the applicable fees and economics from such Re-Opening. The terms and conditions of such Re-opening will be agreed in good faith by the Company and Jefferies and will be based on the prevailing market for similar services for global, full-service investment banks.

(c)    If the Company determines, during the term of this Agreement or during the 6-month period following the effective date of termination of this Agreement, to pursue any merger, consolidation, sale, transfer or other disposition involving all or a material portion of the Company's or any Company subsidiary's stock or assets or acquisition involving all or a material portion of the stock or assets of another party or group of affiliated parties, or any restructuring transaction (through a recapitalization, extraordinary dividend, stock repurchase, spin-off, joint venture or otherwise), then Jefferies shall have the right, but not the obligation, to pitch to act as financial advisor to the Company for any and all such transaction or transactions and to receive fees in an amount to be mutually determined in good faith by the Company and Jefferies and will

**Banro Corporation**
October 12, 2016
Page 8

be based on the prevailing market for similar services for global, full-service investment banks.

(d)     The Company will promptly notify Jefferies in writing if it intends to pursue any such transaction(s) referenced in this Section 9, and, if Jefferies exercises its rights with respect thereto (and, in the case of the rights to pitch set forth in 9(a) and 9(c) the Company selects Jefferies to act in connection therewith), then the Company will enter into a separate agreement for such engagement similar to this Agreement. It is expressly agreed and acknowledged that the absence of any such separate agreements will not relieve the Company of its obligations under this Section 9.

(e)     The Company acknowledges that Jefferies' direct parent, Jefferies Group LLC, is a full service financial institution engaged in a wide range of investment banking and other activities (including, but not limited to, investment management, corporate finance, securities underwriting, trading and research and brokerage activities).   The Company also acknowledges that Jefferies Group LLC's ultimate parent, Leucadia National Corporation (collectively with its subsidiaries and affiliates (including Jefferies Group LLC), "Leucadia"), is a diversified holding company engaged through its consolidated subsidiaries in a variety of businesses, including, buying and selling companies and business lines and making strategic investments in other companies and businesses, in each case from which conflicting interests, or duties, may arise, and that Leucadia maintains certain officers, directors and employees who also perform the same or similar roles for Jefferies.  Information that is held elsewhere within Leucadia, but of which none of the individuals in Jefferies investment banking department involved in providing the services contemplated by this Agreement actually has (or without breach of internal procedures can properly obtain) knowledge, will not for any purpose be taken into account in determining Jefferies' responsibilities to the Company under this Agreement. Neither Jefferies nor any other part of Leucadia has or will have any duty to disclose to the Company or use for the Company's benefit any non-public information acquired in the course of providing services to any other party, engaging in any transaction (on its own account or otherwise) or otherwise carrying on its business. In addition, in the ordinary course of business, Leucadia may trade the securities of the Company and of potential participants in the Transaction for its own account and for the accounts of customers, and may at any time hold a long or short position in such securities.  Jefferies recognizes its responsibility for compliance with applicable securities laws and regulations and stock exchange and FINRA rules in connection with such activities.  Further, the Company acknowledges that from time to time Jefferies' research department may publish research reports or other materials, the substance and/or timing of which may conflict with the views or advice of the members of the Jefferies' investment banking department, and may have an adverse effect on the Company's interests in connection with the Transaction or otherwise.  Jefferies' investment banking department is managed separately from its research department, and does not have the ability to prevent such occurrences.  Leucadia, its directors, officers and employees may also at any time invest on a principal basis or manage or advise funds that invest on a

FILED: NEW YORK COUNTY CLERK 06/23/2017 05:17 PM
NYSCEF DOC. NO. 3 Case 1:17-cv-05490-AT  Document 1-1  Filed 07/19/17  Page 19 of 30

INDEX NO. 654456/2017
RECEIVED NYSCEF: 06/23/2017

**Banro Corporation**
October 12, 2016
Page 9

principal basis in any company that may be involved in the transactions contemplated hereby.

(f)    The Company acknowledges and agrees that (i) Jefferies will act as an independent contractor hereunder, its responsibility is solely owed to the Company and contractual in nature, and Jefferies does not owe the Company, or any other person or entity (including, without limitation, any securityholders, affiliates, creditors or employees of the Company), any fiduciary or similar duty as a result of its engagement hereunder or otherwise, (ii) Jefferies and its affiliates will not be liable for any losses, claims, damages or liabilities arising out of the actions taken, omissions of or advice given by other parties who are providing services to the Company, (iii) Jefferies is not an advisor as to legal, tax, accounting or regulatory matters in any jurisdiction, (iv) the Company has consulted, and will consult, as appropriate, with its own advisors concerning such matters and shall be responsible for making its own independent investigation and appraisal of this Agreement and the transactions contemplated hereby, and (v) the Company is capable of evaluating the merits and risks of such transactions and the fees payable in connection therewith and that it understands and accepts the terms, conditions, and risks of such transactions and fees.

(g)    In connection with any Transaction involving the offer and sale by the Company of any securities, (i) such sale, including the determination of the price of such securities, shall be an arm's-length commercial transaction between the Company and the other parties to a Transaction (including Jefferies in the event that it acts as an underwriter or initial purchaser), (ii) Jefferies will not be the agent or fiduciary of the Company or its securityholders, affiliates, creditors, employees or any other party, (iii) Jefferies shall not assume fiduciary responsibility in favor of the Company (irrespective of whether Jefferies has advised or is currently advising the Company on other matters) and Jefferies shall have no obligation to the Company with respect to the Transaction except as may be set forth herein or in a Definitive Agreement (as applicable), and (iv) the Company agrees that it will not hold Jefferies liable or responsible in the event that a Transaction is not successfully consummated, including but not limited to, as a result of an adverse change in the financial or securities markets, insufficient demand for instruments similar to the Debt Securities or lack of interest by investors in the Transaction.

10.    Governing Law.  This Agreement shall be governed by, and construed in accordance with, the internal laws of the State of New York.

11.    Exclusive Jurisdiction.  Except as set forth below, the parties agree that any dispute, claim or controversy directly or indirectly relating to or arising out of this Agreement, the termination or validity of this Agreement, any alleged breach of this Agreement, the engagement contemplated by this Agreement or the determination of the scope of applicability of this Agreement to this Section 11 (any of the foregoing, a "Claim") shall be commenced in the Commercial Division of the Supreme Court of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York, which courts shall have exclusive

**Banro Corporation**
October 12, 2016
Page 10

jurisdiction over the adjudication of such matters and shall decide the merits of each claim on the basis of the internal laws of the State of New York without regard to principles of conflicts of law. The Company and Jefferies agree and consent to personal jurisdiction, service of process and venue of such courts, waive all right to trial by jury for any claim and agree not to assert the defense of forum non-conveniens. The Company and Jefferies also agree that service of process may be effected through next-day delivery using a nationally-recognized overnight courier or personally delivered to the addresses set forth or referred to in Section 14 hereof. In any such Claim, all of the costs and the reasonable attorneys' fees of the prevailing party (it being understood that the determination as to which party prevailed shall be made by the court in such Claim) shall be borne by the party who did not prevail. The Company and Jefferies further agree that a final, non-appealable judgment in respect of any claim brought in any such court shall be binding and may be enforced in any other court having jurisdiction over the party against whom the judgment is sought to be enforced. The Company also hereby consents to personal jurisdiction, service and venue in any court in which any Action (as defined in Schedule A) is brought by any third party against Jefferies or any Indemnified Person.

12.    Payments.

    (a)    All payments to be made to Jefferies hereunder shall be non-refundable and made in cash by wire transfer of immediately available U.S. funds. Such fee may be paid by the Company in the form of a "gross spread" or similar underwriting discount if Jefferies' role hereunder is that of an underwriter or an initial purchaser. No fee payable to Jefferies hereunder shall be credited against any other fee due to Jefferies. If the aggregate consideration by reference to which fees are to be paid is denominated in a currency other than U.S. dollars, it shall be converted into U.S. dollars at the closing mid-market exchange rate in New York on the business day prior to that on which payment of the fees is to be made. The Company's obligation to pay any fee or expense set forth herein shall be absolute and unconditional and shall not be subject to reduction by way of setoff, recoupment or counterclaim.

    (b)    All amounts payable to Jefferies or any other Indemnified Person under the terms of this Agreement shall be paid to Jefferies or any other Indemnified Person in U.S. dollars, free and clear of all deductions or withholdings. If the deduction or withholding is required by law, the Company will pay such additional amount as will be required to ensure that the net amount received by Jefferies or any other Indemnified Person is equal to the amount it would have received had no such deduction or withholding or charge been made.

    (c)    All fees and expenses payable under the provisions of this Agreement are subject to any applicable value added, sales, turnover, consumption or similar tax, which will be payable by or charged to the Company.

13.    Announcements, etc.    The Company agrees that Jefferies may, following consummation of a Transaction, describe the Transaction in any form of media or in Jefferies' marketing materials, stating Jefferies' role and other material terms of the

**Banro Corporation**
October 12, 2016
Page 11

Transaction and using the Company's name and logo in connection therewith; provided, that Jefferies shall not use in any such description any material terms of a Transaction, which have not been publicly disclosed, without the Company's prior approval for the first such use, which approval shall not be unreasonably withheld or delayed. The Company agrees that it will ensure that no publications or announcements are made by the Company or its officers or employees (including in interviews with journalists) which refer to this engagement or the Transaction which might reasonably be expected to have an adverse effect on the marketability of the Transaction without the prior consent of Jefferies. Any press release the Company may issue announcing a Transaction will, at Jefferies' request and subject to applicable securities laws, contain a reference to Jefferies' role in connection with the Transaction in form and substance reasonably satisfactory to Jefferies.

14.    Notices; Agent for Service.

     (a)    Notice required to be given in writing pursuant to any of the provisions of this Agreement shall be mailed by next-day delivery using a nationally-recognized overnight courier or hand-delivered (a) if to the Company, to the address of the Company set forth above, and (b) if to Jefferies, at 520 Madison Avenue, New York, New York 10022, Attention: General Counsel. The Company and Jefferies agree that service of process may be made by Federal Express, and each of the Company and Jefferies waive any objection regarding invalid service of process.

15.    Miscellaneous.

     (a)    This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof, and may not be amended or modified except in writing signed by each party hereto. This Agreement may not be assigned by either party hereto without the prior written consent of the other party hereto, to be given in the sole discretion of the party from whom such consent is being requested. Any attempted assignment of this Agreement made without such consent shall be void and of no effect, at the option of the non-assigning party. This Agreement is solely for the benefit of the Company, Jefferies and, to the extent expressly set forth herein, the Indemnified Persons and no other party shall be a third party beneficiary to, or otherwise acquire or have any rights under or by virtue of, this Agreement; provided that Jefferies may, in the performance of its services hereunder, procure the services of other members of Leucadia (as defined above), which members shall be entitled to the benefits and subject to the terms of this Agreement. If any provision hereof shall be held by a court of competent jurisdiction to be invalid, void or unenforceable in any respect, or against public policy, such determination shall not affect such provision in any other respect nor any other provision hereof. Headings used herein are for convenience of reference only and shall not affect the interpretation or construction of this Agreement. This Agreement may be executed in facsimile or other electronic counterparts, each of which will be deemed to be an original and all of which together will be deemed to be one and the same document. This Agreement has been reviewed by each of the signatories hereto and its counsel.

**Banro Corporation**
October 12, 2016
Page 12

There shall be no construction of any provision against Jefferies because this Agreement was drafted by Jefferies, and the parties waive any statute or rule of law to such effect.

     (b)     This Agreement does not constitute an offer of any finance or any other commitment on behalf of Jefferies to provide any financing to the Company or any other person or entity or to underwrite the Transaction and nothing herein shall be construed as such.

16.     Patriot Act.     Jefferies hereby notifies the Company that pursuant to the requirements of the USA PATRIOT Improvement and Reauthorization Act. Pub. L. N 109-177 (Mar. 9, 2006) (the "Patriot Act"), it is required to obtain, verify and record information that identifies the Company in a manner that satisfies the requirements of the Patriot Act. This notice is given in accordance with the requirements of the Patriot Act.

**Banro Corporation**
October 12, 2016
Page 13

Please sign below and return to Jefferies to indicate the Company's acceptance of the terms set forth herein, and once executed by each of Jefferies and the Company, this Agreement shall constitute a binding agreement between the Company and Jefferies as of the date first written above.

Sincerely,

**JEFFERIES LLC**

Name: Rodolfo L. Molina
Title: Managing Director

Accepted and Agreed:

**BANRO CORPORATION**
On behalf of its present and future affiliates and subsidiaries and any entity used thereby to facilitate the transactions contemplated hereby

Name: John A, Clarke
Title: Chief Executive Officer

## SCHEDULE A

Reference is made to the Agreement attached hereto between Jefferies and the Company. Unless otherwise noted, all capitalized terms used herein shall have the meanings set forth in the Agreement.

As further consideration under the Agreement, the Company agrees to indemnify and hold harmless Jefferies and its affiliates, and each of their respective officers, directors, managers, members, partners, employees and agents, and any other persons controlling Jefferies or any of its affiliates (collectively, "Indemnified Persons"), to the fullest extent lawful, from and against any claims, liabilities, losses, damages, costs and expenses (or any action, claim, suit or proceeding (an "Action") in respect thereof), as incurred, (a) related to or arising out of or in connection with any untrue or alleged untrue statement of material fact contained in the Materials or other information provided by or on behalf of the Company to Jefferies, investors or parties to the Transaction, or omission or alleged omission to state a material fact necessary to make the statements contained therein, in light of the circumstances in which they were made, not misleading, or (b) otherwise related to or arising out of or in connection with Jefferies' services (whether occurring before, at or after the date hereof) under the Agreement, the Transaction or any proposed transaction contemplated by the Agreement or any Indemnified Person's role in connection therewith, whether or not resulting from an Indemnified Person's negligence ("Losses"), provided, however, that, in the case of the foregoing clause (b), the Company shall not be responsible for any Losses that arise out of or are based on any action of or failure to act by Jefferies to the extent such Losses are determined, by a final, non-appealable judgment by a court, to have resulted solely from Jefferies' gross negligence or willful misconduct.

The Company agrees that no Indemnified Person shall have any liability to the Company or its owners, parents, affiliates, securityholders or creditors for any Losses, except to the extent such Losses are determined, by a final, non-appealable judgment by a court, to have resulted solely from Jefferies' gross negligence or willful misconduct.

The Company agrees that it will not settle or compromise or consent to the entry of any judgment in, or otherwise seek to terminate, any pending or threatened Action in respect of which indemnification or contribution may be sought hereunder (whether or not any Indemnified Person is a party to such Action) unless Jefferies has given its prior written consent, or the settlement, compromise, consent or termination (i) includes an express unconditional release of such Indemnified Person from all Losses arising out of such Action and (ii) does not include any admission or assumption of fault on the part of any Indemnified Person.

If, for any reason (other than by reason of a final, non-appealable judgment by a court as to the gross negligence or willful misconduct of Jefferies as provided above) the foregoing indemnity is judicially determined to be unavailable to an Indemnified Person for any reason or insufficient to hold any Indemnified Person harmless, then the Company agrees to contribute to any such Losses in such proportion as is appropriate to reflect the relative benefits received or proposed to be received by the Company and its securityholders, on the one hand, and by Jefferies, on the other, from the Transaction or proposed Transaction or, if allocation on that basis is not permitted under applicable law, in such proportion as is appropriate to reflect not only the relative benefits received by the Company and its securityholders, on the one hand, and Jefferies, on the other, but also the relative fault of the Company and its securityholders on the one hand, and Jefferies, on the other, as well as any relevant equitable considerations. Notwithstanding the provisions hereof, the aggregate contribution of all Indemnified Persons to all Losses shall not exceed the amount of fees actually received by Jefferies with respect to the services rendered pursuant to the Agreement. Relative benefits to the Company and its securityholders, on the one hand, and to Jefferies, on the other hand, shall be deemed to be in the same proportion as (i) the total transaction value of the Transaction or the proposed Transaction bears to (ii) all fees actually received by Jefferies in connection with the Agreement.

The Company agrees to reimburse the Indemnified Persons for all costs and expenses (including, without limitation, fees and expenses of counsel) reasonably incurred by the Indemnified Persons (including all such costs and expenses incurred to enforce the terms of this Schedule A) as they are incurred in connection with investigating, preparing, defending or settling any Action for which indemnification or contribution has or is reasonably likely to be sought by the Indemnified Person, whether or not in connection with litigation in which any Indemnified Person is a named party; provided that, if any such reimbursement or its expenses relating to a Loss that is determined, by a final, non-appealable judgment by a court, to have resulted solely from Jefferies' gross negligence or willful misconduct, such Indemnified Person shall promptly repay such amount to the Company. If any of Jefferies' professional personnel appears as witness, is deposed or is otherwise involved in the defense of any Action against Jefferies, the Company or the Company's affiliates, officers, managers, directors or employees, the Company will pay Jefferies (i) with respect to each day that such person appears as a witness or is deposed and/or (ii) with respect to each day that such person is involved in the preparation therefor, (a) a fee of $4,000 per day for each such person with respect to each appearance as a witness or a deponent and (b) at a rate of $400 per hour with respect to each hour of preparation for any such appearance, and the Company will reimburse Jefferies for all out-of-pocket expenses (including, without limitation, fees and expenses of counsel) incurred by Jefferies by reason of any of its personnel being involved in any such Action.

## SCHEDULE A

The indemnity, contribution and expense reimbursement obligations set forth herein (i) shall be in addition to any liability the Company may have to any Indemnified Person at common law or otherwise, (ii) shall survive the expiration or termination of the Agreement or completion of Jefferies' services hereunder, (iii) shall apply to any modification in writing of Jefferies' engagement, (iv) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of Jefferies or any other Indemnified Person, (v) shall be binding on any successor or assign of the Company and successors or assigns to the Company's business and assets and (vi) shall inure to the benefit of any successor or assign of any Indemnified Person. For a period beginning on the date hereof and ending on that date which is three years from termination of this Agreement, prior to entering into any agreement or arrangement with respect to, or effecting, any proposed sale, exchange, dividend or other distribution or liquidation of all or a significant portion of its assets in one or a series of transactions or any significant recapitalization or reclassification of its outstanding securities that does not directly or indirectly provide for the assumption of the obligations of the Company set forth in this Schedule A, the Company will notify Jefferies in writing thereof (if not previously notified) and, if requested by Jefferies, shall arrange in connection therewith alternative means of providing for obligations of the Company set forth in this Schedule A, including the assumption of such obligations by another party, insurance, surety bonds or the creation of an escrow, in each case in an amount and upon terms and conditions satisfactory to Jefferies; provided, however, that, if any action, proceeding or investigation is pending at the end of such three-year period for which a claim for indemnification, contribution or reimbursement under this Schedule A has been made, the Company's obligations hereunder shall continue until such action, proceeding or investigation has been ultimately resolved.

INDEX NO. 654456/2017
Case 1:17-cv-05490-AT   Document 1-1   Filed 07/19/17   Page 26 of 30 RECEIVED NYSCEF: 06/23/2017

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

JEFFERIES LLC,

                                       Plaintiff,

                 - against -

BANRO CORP.,

                                   Defendant.

Index No:

Date purchased:

**SUMMONS**

TO THE ABOVE-NAMED DEFENDANT:

        YOU ARE HEREBY SUMMONED to answer the Complaint in this action, and to serve a copy of your Answer, or, if the Complaint is not served with this Summons, to serve a Notice of Appearance on the Plaintiff's attorneys, within twenty (20) days after service of this Summons, exclusive of the date of service, where service is made by delivery upon you personally within the state, or within thirty (30) days after completion of service where service is made in any other manner, and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

        Pursuant to Section 501 of the New York Civil Practice Law and Rules, the basis of the venue designated is a contractual provision agreeing to venue in this Court.

        Plaintiff Jefferies LLC ("Jefferies") hereby alleges, upon knowledge as to Jefferies and upon information and belief as to all other allegations, its Complaint against Defendant Banro Corporation. ("Banro" or the "Company"):

1

Dated: June 23, 2017
New York, New York

HERBERT SMITH FREEHILLS
NEW YORK LLP

By      */s/ Scott S. Balber*
_____

Scott S. Balber
Attorneys for Plaintiff
450 Lexington Avenue
14th Floor
New York, NY 10017
(917) 542-7600
scott.balber@hsf.com

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

JEFFERIES LLC,

                                    Plaintiff,          Index No: 654456/2017

                 - against -                            Date purchased: 6/23/2017

BANRO CORP.,                                            **AMENDED SUMMONS**

                                    Defendant.

TO THE ABOVE-NAMED DEFENDANT:

     YOU ARE HEREBY SUMMONED to answer the Complaint in this action, and to serve a copy of your Answer, or, if the Complaint is not served with this Amended Summons, to serve a Notice of Appearance on the Plaintiff's attorneys, within twenty (20) days after service of this Amended Summons, exclusive of the date of service, where service is made by delivery upon you personally within the state, or within thirty (30) days after completion of service where service is made in any other manner, and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

     Pursuant to Section 501 of the New York Civil Practice Law and Rules, the basis of the venue designated is a contractual provision agreeing to venue in this Court.

Dated: June 28, 2017
New York, New York

HERBERT SMITH FREEHILLS
NEW YORK LLP

By      /s/ Scott S. Balber

Scott S. Balber
Attorneys for Plaintiff
450 Lexington Avenue
14th Floor
New York, NY 10017
(917) 542-7600
scott.balber@hsf.com

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

JEFFERIES LLC,

Plaintiff,

- against -

BANRO CORP.,

Defendant.

Index No: 654456/2017

Date purchased: 6/23/2017

**AFFIDAVIT OF SERVICE**

STATE OF NEW YORK )
                   ) ss:
COUNTY OF NEW YORK )

Jessica Garatva, being duly sworn, deposes and says:

I am not a party to this action, I am over the age of eighteen, and I am employed by Herbert Smith Freehills New York LLP, located at 450 Lexington Avenue, 14th Floor, New York, New York 10017. On June 29, 2017, and in accordance with the method of service agreed to by the parties in the Engagement Letter Agreement set forth as Exhibit A to the Complaint, I served a true and correct copy of an Amended Summons and Complaint by Federal Express upon:

Banro Corporation
1 First Canadian Place
Suite 7070
100 King Street West
Toronto, ON
M5X 1E3
Canada

Jessica Garatva

Sworn to and subscribed
before me on July 6, 2017

Notary Public

STEPHANIE J. MORANO
Notary Public, State of New York
No. 01MO6252202
Qualified in Kings County
Commission Expires Dec. 5, 20 19

12/917707_2

1 of 1